1
2
3
4
5
6
7               **UNITED STATES DISTRICT COURT**
8                   **DISTRICT OF NEVADA**
9
10  YVETTE WEINSTEIN, Trustee of the
    George J. Latelle, Jr. Bankruptcy
11  Estate,                                     Case No. 2:11-cv-00591-LDG (PAL)
12          Plaintiff,                          <u>**ORDER**</u>
13  v.
14  AUTOZONERS LLC, *et al.*,
15          Defendants.
16

17          The plaintiff, Yvette Weinstein, Trustee of the George J. Latelle, Jr. Bankruptcy

18  Estate ("Trustee"), prosecutes this action in which it is alleged that defendant AutoZoners

19  LLC ("AutoZone") interfered with the rights of George J. Latelle, Jr. ("Latelle"), and

20  retaliated against him, in violation of the Family and Medical Leave Act, 29 U.S.C. §2601,

21  *et seq.*[1]  Pending before the Court are motions by each party seeking partial summary

22  judgment (## 93, 100), and motions by the Trustee requesting that the Court strike

23  AutoZone's motion (#105), and to have these matters heard in oral argument (#106).

24  Having considered the record as a whole, and the arguments of the parties, the Court will

25  _____

26          [1]     The Trustee has conceded she cannot maintain a claim against AutoZone
    that it retaliated against Latelee in violation of the FMLA.

1   grant the Trustee's motion for partial summary judgment, will deny the remainder of the

2   Trustee's motions, and will grant AutoZone's motion for partial summary judgment.

3       Background

4       Latelle worked for AutoZone and, starting at some point in 2008, was the sole

5   caregiver for his mother who suffered from dementia. In late 2008, Latelle requested and

6   was granted FMLA leave through early 2009 to provide care and assistance to his mother.

7   When  Latelle returned to work following this leave, he continued to work pursuant to an

8   adjusted work schedule that allowed him to start work later in the day, and to leave early.

9       In April 2009, AutoZone implemented a "Store Hourly Attendance Violations Policy,"

10  pursuant to which various points or fractions thereof were assessed against employees for

11  tardiness or absence.  Under this policy, employees accumulating 12 points within a 12-

12  month period would be terminated.  Over the following year, Latelle was assessed points,

13  and given Attendance Corrective Action Review Forms, for being tardy or absent.  In the

14  complaint, Latelle alleged he was availing himself of intermittent FLMA leave.  In April

15  2010, Latelle had accumulated 12 points and was terminated.

16      On the day following his termination, Latelle filed for bankruptcy.  He did not identify,

17  as an asset of the estate, any actual or potential legal claim.

18      On June 21 and July 20, 2010, Latelle attended a hearing, and was represented by

19  Michael Gebhart, regarding whether Latelle was entitled to unemployment benefits.  During

20  this hearing, Gebhart asserted that AutoZone had duties under the FMLA, and that

21  employees entitled to FMLA protection could not be disciplined for using FMLA leave.

22      On July 23, 2010, a creditor filed suit against Latelle in bankruptcy court.  Gebhart

23  represented Latelle in this suit.

24      Latelle was discharged from bankruptcy on August 4, 2010, and proceedings were

25  terminated on September 28, 2010.

26

2

1    On April 18, 2011, Latelle filed the complaint that initiated the instant case.  Latelle

2 was represented by Gebhart.  On July 21, 2011, AutoZone moved for summary judgment,

3 arguing that Latelle was estopped from prosecuting this action because of his failure to

4 disclose the lawsuit as an asset of the bankruptcy estate.  Latelle opposed, arguing a

5 question of fact existed as to whether he was aware of the claim while the bankruptcy was

6 pending.

7    On August 22, 2011, the Trustee received a letter informing her of the instant suit

8 and moved to reopen Latelle's bankruptcy, which occurred on September 22, 2011.

9 Gebhart substituted as counsel for Latelle in the bankruptcy and filed amended schedules

10 for loss of pension benefits and loss of future wages, but did not disclose the instant suit.

11 The Trustee subsequently moved to be substituted as the real party in interest in this suit.

12 In so doing she asserted, *inter alia* (and through prior counsel), that "[i]t seems apparent to

13 her that the Debtor is continuing his pattern of lack of candor and obfuscation toward the

14 bankruptcy court.  The Trustee believes that this is a textbook case for the application of

15 judicial estoppel."

16    The Court granted the Trustee's motion for substitution, denied all motions filed by

17 Latelle, and denied AutoZone's motions without prejudice.

18    On November 9, 2012, Gebhart filed a notice of his appearance on behalf of the

19 Trustee in this action.

20    Standard of Review for Motion for Summary Judgment

21    In considering a motion for summary judgment, the court performs "the threshold

22 inquiry of determining whether there is the need for a trial—whether, in other words, there

23 are any genuine factual issues that properly can be resolved only by a finder of fact

24 because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty*

25 *Lobby, Inc.*, 477 U.S. 242, 250 (1986); *United States v. Arango*, 670 F.3d 988, 992 (9th Cir.

26 2012).  To succeed on a motion for summary judgment, the moving party must show (1)

3

1  the lack of a genuine issue of any material fact, and (2) that the court may grant judgment

2  as a matter of law.  Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

3  (1986); *Arango*, 670 F.3d at 992.

4          A material fact is one required to prove a basic element of a claim.  *Anderson,* 477

5  U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily

6  renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Additionally, "[t]he mere

7  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."

8  *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting

9  *Anderson*, 477 U.S. at 252).

10         "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

11  adequate time for discovery and upon motion, against a party who fails to make a showing

12  sufficient to establish the existence of an element essential to that party's case, and on

13  which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "Of

14  course, a party seeking summary judgment always bears the initial responsibility of

15  informing the district court of the basis for its motion, and identifying those portions of 'the

16  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

17  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

18  fact."  *Id.* at 323.  As such, when the non-moving party bears the initial burden of proving,

19  at trial, the claim or defense that the motion for summary judgment places in issue, the

20  moving party can meet its initial burden on summary judgment "by 'showing'–that is,

21  pointing out to the district court–that there is an absence of evidence to support the

22  nonmoving party's case."  *Id.* at 325.  Conversely, when the burden of proof at trial rests on

23  the party moving for summary judgment, then in moving for summary judgment the party

24  must establish each element of its case.

25         Once the moving party meets its initial burden on summary judgment, the non-

26  moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro.

4

1   56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir.

2   2000).  As summary judgment allows a court "to isolate and dispose of factually

3   unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the

4   evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H.

5   Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,

6   will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.

7   v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  That is, the opposing party cannot

8   "'rest upon the mere allegations or denials of [its] pleading' but must instead produce

9   evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"

10  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed.

11  R. Civ. Pro. 56(e)).

12      <u>Trustee's Motion for Partial Summary Judgment</u>

13          The Trustee seeks a ruling that AutoZone is liable for interfering with Latelle's rights

14  under the FMLA, because AutoZone considered Latelle's use of FMLA leave in making the

15  decision to terminate him.  The Ninth Circuit has recognized the prima facie elements of an

16  FMLA cause of action as: (1) the employee was eligible for the FMLA's protections, (2) the

17  employer was covered by the FMLA, (3) the employee was entitled to leave under the

18  FMLA, (4) the employee provided sufficient notice of his intent to take leave, and (5) the

19  employer denied the employee FMLA benefits to which he was entitled.  *Sanders v. City of

20  Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

21          *(1 & 2) Whether Latelle was eligible for the protections of, and whether AutoZone

22  was an employer covered by, the FMLA?*  Though not specifically briefed or argued by

23  either party, the Court construes the Trustee's submission of AutoZone's January 9, 2009,

24  letter approving Latelle's FMLA leave commencing November 17, 2008, as undisputed

25  evidence that Latelle was eligible for FMLA's protections, and that AutoZone was an

26

1  employer covered by the FMLA.  *See,* 29 U.S.C. 2611(2, 4) (defining an "eligible employee"

2  and "employer" for purposes of the FMLA).

3       *(3) Whether Latelle was entitled to FMLA Leave*?  An eligible employee is entitled to

4  leave under the FMLA "[i]n order to care for the . . . parent, of the employee, if such . . .

5  parent has a serious health condition."  29 U.S.C. §2612(a)(1)(C).  A "'serious health

6  condition' means an illness, injury, impairment, or physical or mental condition that involves

7  – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B)

8  continuing treatment by a health care provider."  29 U.S.C. §2611(11).  Serious health

9  conditions include: "Permanent or long-term conditions. A period of incapacity which is

10  permanent or long-term due to a condition for which treatment may not be effective. The

11  employee or family member must be under the continuing supervision of, but need not be

12  receiving active treatment by, a health care provider. Examples include Alzheimer's, a

13  severe stroke, or the terminal stages of a disease."  29 C.F.R. §825(115)(d).  Leave for a

14  parent's serious health condition "may be taken intermittently or on a reduced leave

15  schedule when medically necessary."  29 U.S.C. §2612(b)(1).  Leave taken intermittently or

16  on a reduced schedule for medical necessity includes leave "taken to provide care or

17  psychological comfort to a covered family member with a serious health condition. . . ."  29

18  C.F.R. §825.202.  A "reduced leave schedule" means "a leave schedule that reduces the

19  usual number of hours per workweek, or hours per workday, of an employee."  29 U.S.C.

20  §2611(9).  "Intermittent leave is FMLA leave taken in separate blocks of time due to a

21  single qualifying reason."  29 C.F.R. §825.202(a).

22       The Trustee has submitted the Certification of Health Care Provider, an AutoZone

23  form, that was completed by Dr. Leovy in connection with Latelle's 2008 FMLA leave.  In

24  the Certificate, Dr. Leovy describes the medical condition of Latelle's mother as dementia,

25  an "ongoing condition since 2003 or before" and one of anticipated "indefinite duration."

26  Latelle's mother is described as "incapacitated + will remain so."  The Certificate further

6

1  provides, in response to a question whether the patient will need intermittent care, that the

2  probable duration will be "indefinite - at least one year."  While AutoZone suggests the

3  certificate "arguably" establishes Latelle's mother suffered a serious medical condition from

4  November 2008 through January 12, 2009, AutoZone provides no further argument

5  suggesting that the certificate does not describe a serious health condition suffered by

6  Latelle's mother.  AutoZone further asserts the certification is not evidence that Latelle's

7  mother suffered a serious health condition after January 12, 2009, because the certificate

8  did not extend beyond January 12, 2009.  AutoZone does not, however, point to any

9  aspect of the certificate indicating either that the certificate expired on January 12, 2009, or

10  (more critically) that Dr. Leovy described a health condition that would, somehow, cease to

11  be serious after January 12, 2009.  Rather, the most cursory review of the certificate

12  establishes that Latelle's mother suffered from dementia and was permanently

13  incapacitated, a serious health condition.  As Latelle's mother suffered from a serious

14  health condition, he was entitled to take leave under the FMLA, which leave included both

15  intermittent leave and a reduced leave schedule, to provide care for her.

16      *(4) Whether Latelle provided sufficient notice of his intent to take leave?*  For

17  foreseeable FMLA leave (such as a reduced leave schedule), an employee must provide at

18  least 30-days advance verbal notice with sufficient information to make the employer aware

19  that the employee needs FMLA-qualifying leave, along with the anticipated timing and

20  duration of the leave.  29 C.F.R. §825.302(a, c).[2]  Such information may include whether

21  the condition renders a family member unable to perform daily activities.  29 C.F.R.

22  §825.302(c).  "When an employee seeks leave due to a FMLA-qualifying reason, for which

23  the employer has previously provided FMLA-protected leave, the employee must

24  specifically reference the qualifying reason for leave or the need for FMLA leave.  In all

25  _____

26      [2]    The regulation recognizes that when 30 days' notice cannot be given, notice must be given as soon as practicable.

7

1   cases, the employer should inquire further of the employee if it is necessary to have more

2   information about whether FMLA leave is being sought by the employee, and obtain the

3   necessary details of the leave to be taken." *Id.* "An employer may require an employee to

4   comply with the employer's usual and customary notice and procedural requirements for

5   requesting leave, absent unusual circumstances." *Id.*

6       For FMLA leave, such as intermittent leave, when the approximate timing of the

7   need for leave is not foreseeable, "an employee must provide notice to the employer as

8   soon as practicable under the facts and circumstances of the particular case.  It generally

9   should be practicable for the employee to provide notice of leave that is unforeseeable with

10  the time prescribed by the employer's usual and customary notice requirements applicable

11  to such leave." 29 C.F.R. §825.303(a).  The employee must, again, "provide sufficient

12  information for an employer to reasonably determine whether the FMLA may apply to the

13  leave request." 29 C.F.R. §825.303(b).  "[T]he employee must specifically reference either

14  the qualifying reason for leave or the need for FMLA leave." *Id.* "The employer will be

15  expected to obtain any additional required information through informal means.  An

16  employee has an obligation to respond to an employer's questions designed to determine

17  whether an absence is potentially FMLA-qualifying.  Failure to respond to reasonable

18  employer inquiries regarding the leave request may result in denial of FMLA protection if

19  the employer is unable to determine whether the leave is FMLA-qualifying." *Id.* "When the

20  need for leave is not foreseeable, an employee must comply with the employer's usual and

21  customary notice and procedural requirements for requesting leave, absent unusual

22  circumstances." 29 C.F.R. §825.303(c).

23      On November 20, 2008, Latelle applied for a leave of absence for the time period

24  November 21, 2008, through January 12, 20009.  In connection with this leave, Latelle

25  submitted the Certification of Dr. Leovy, detailing his mother's serious health condition.

26  Autozone admits that it approved Latelle taking FMLA leave commencing November 17,

8

1  2008, through January 5, 2009.  Autozone informed Latelle that his leave of absence was

2  approved by letter dated January 9, 2009.

3        While Latelle was taking the 2008 FMLA leave, Amy Nagel became his supervisor.

4  She testified, in her deposition, that the district manager (Mike Lewis) informed her that

5  Latelle was on leave, the dates he would be returning, and that Latelle's mother suffered

6  from a serious terminal medical condition.[3]  Nagel further testified she talked with Latelle on

7  his return, that Latelle informed her of the schedule agreed upon by Latelle's prior

8  supervisor, and that she allowed Latelle to come in later than normal and leave early so

9  that Latelle could get his mother to and from day care.  Nagel testified that Latelle informed

10 her that he was his mother's sole caregiver, and informed her of the care he provided to his

11 mother (including bathing and dressing her, taking care of her every need, and getting her

12 to adult day care).  Rather, Autozone concedes in its opposition that it "made numerous

13 adjustments to Latelle's schedule in order to accommodate his obligations as the sole care

14 provider for his mother."  The Trustee has met her burden of showing that Latelle provided

15 sufficient notice of the foreseeable need for a reduced work schedule protected by the

16 FMLA to provide care to his mother.

17       AutoZone's attendance report for Latelle establishes the dates he was tardy or

18 absent between April 15, 2009, and April 15, 2010.  In her deposition, Nagel testified that

19 from the time she became store manager until February 2010, Latelle's absences and

20 tardies had to do with his mother's condition, and that Latelle would inform her that he was

21 going to be absent or tardy because it had to do with his mother.

22       AutoZone argues, in response to Nagel's testimony that Latelle's absences and

23 tardies had to do with his mother's condition, that "Latelle has provided no evidence

24 ─────────────

25       [3]     AutoZone asserts that whether Lewis informed Nagel that Latelle's mother
   suffered a serious health condition is disputed, as Lewis has stated he knew very little
26 about her health condition.  The dispute is not material, as AutoZone was aware of the
   serious health condition of Latelle's mother, having approved his FMLA leave.

showing this to be true." The argument is meritorious in part and misplaced in part for several reasons, the least of which is that Latelle has no burden of providing evidence as he is not a party to this litigation. Further, to the extent that Autozone is contesting whether the Trustee provided evidence regarding the content of Nagel's testimony, the Trustee's submission of Nagel's deposition testimony is sufficient evidence. Finally, to the extent AutoZone is contesting whether Latelle was providing care to his mother, the argument is without merit. Latelle reported his reason for taking leave to Nagel, a reason for which AutoZone had previously approved FMLA leave. This shifted to AutoZone the burden of obtaining any additional information. AutoZone cannot now complain whether Latelle was actually providing care for his mother, as he was reporting, if it failed to seek any additional information in connection with each requested tardy or absence.

AutoZone has shown that it requested additional information for Latelle's January 4-7, absences. While the Trustee argues that Latelle submitted the requested information by placing it on the desk of Lewis, this fact is (at a minimum) disputed. Accordingly, the Court finds that an issue of fact exists whether Latelle sufficiently informed AutoZone that he took FMLA leave for these dates. However, AutoZone has not made any showing that it requested additional information regarding Latelle's tardies and absences in 2009.

Finally, AutoZone generally argues that Latelle was terminated for failing to follow policies and procedures, suggesting that Latelle's notices were insufficient as he did not follow AutoZone's usual and customary practices in connection with requesting or notifying AutoZone of an unforeseeable tardy or absence. The argument requires consideration of AutoZone's no fault attendance policy. Pursuant to the "no fault" attendance policy, which Autozone implemented in April 2009, one-half point was assessed against an employee who was tardy but provided proper notification. The policy defines "tardy with proper notification" as "[n]otifying manager on duty of absence within 30 minutes before the start of the scheduled shift, and by speaking with the manager on duty directly (and not by voice

10

1    mail)."  A tardy in which proper notification was not provided was assessed a full point.

2    Similarly, an absence with proper notification was assessed one point and an absence

3    without proper notification was assessed two points.  The policy defined an absence with

4    proper notification as "[n]otifying the manager on duty of absence within one (1) hour

5    before the start of the scheduled shift, and by speaking with the manager on duty directly

6    (and not by voice mail)."

7          The attendance report for Latelle establishes that AutoZone assessed him one-half

8    point for being late on May 5, 2009, and one-half point for being late on September 23,

9    2009.  Given that only a half-point was assessed requires the conclusion that AutoZone

10   determined Latelle to be tardy with proper notification on each of these occasions.

11   AutoZone does not identify any other "usual and customary notice requirements" applicable

12   to an employee notifying AutoZone that he would be arriving late for his shift.  In light of

13   Nagel's testimony than Latelle informed her, on each occasion that he was tardy, that he

14   was taking care of his mother, and Autozone's attendance report establishing that Latelle

15   provided proper notification, the Court finds undisputed issue that Latelle provided

16   sufficient notice to AutoZone that he was tardy so that he could provide care for his mother.

17         The attendance report also establishes that AutoZone assessed Latelle one point for

18   being absent on September 21, 2009.  Given that AutoZone assessed only one point for

19   this absence requires the conclusion that AutoZone determined Latelle had provided

20   proper notification in connection with his absence on this date.   AutoZone does not identify

21   any other "usual and customary notice requirements" applicable to an employee notifying

22   AutoZone that he would be absent.  In light of Nagel's testimony than Latelle informed her,

23   on each occasion that he was absent, that he was taking care of his mother, and in light of

24   Autozone's attendance report establishing that Latelle provided proper notification, the

25   Court finds undisputed issue that Latelle provided sufficient notice to AutoZone that he was

26   absent on September 21, 2009, so that he could provide care for his mother.

1     *(5) Whether AutoZone interfered with Latelle's FMLA rights?*  Pursuant to

2  AutoZone's no fault attendance policy, an employee accumulating 12 points within 12

3  months would be terminated.  AutoZone does not dispute that it terminated Latelle on April

4  26, 2010, for having accumulated 12 points for tardies and absences in the year preceding

5  April 15, 2010.  As discussed in 29 C.F.R. §220(c): "The Act's prohibition against

6  interference prohibits an employer from discriminating or retaliating against an employee or

7  prospective employee for having exercised or attempted to exercise FMLA rights.  For

8  example . . . employers cannot use the taking of FMLA leave as a negative factor in

9  employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA

10  leave be counted under no fault attendance policies."   As previously found, AutoZone

11  assessed at least two points against Latelle for taking FMLA leave under its no fault

12  attendance policy.  Such conduct constitutes interference with Latelle's right to take FMLA

13  leave without imposition of any negative employment factor.  Further, AutoZone offers no

14  argument that it would or could have terminated Latelle under the no fault attendance

15  policy without counting the points assessed for the May 5, and Sept. 23, tardies, and the

16  Sept. 21, absence.

17       As the Trustee has shown, as a matter of law, that AutoZone interfered with Latelle's

18  FMLA rights by assessing points against Latelle for taking leave that he was entitled to

19  take, and for which he provided sufficient notice, the Court will grant partial summary

20  judgment against AutoZone, finding it liable for interfering with Latelle's FMLA rights.

21       <u>AutoZone's Motion for Partial Summary Judgment</u>

22       AutoZone seeks a ruling preventing the Trustee from recovering damages in excess

23  of the amount necessary to satisfy the timely-filed claims of Latelle's creditors in the related

24

25

26

1   bankruptcy matter.[4]  AutoZone argues that this limited estoppel is appropriate because

2   Latelle failed to disclose his potential or actual FMLA claim as an asset of the bankruptcy.

3   The Trustee opposes, arguing that Latelle is no longer a party to this action and that the

4   Trustee is prejudiced by AutoZone's failure to affirmatively plead judicial estoppel after she

5   was substituted as the real party in interest.  The Court finds that, as Latelle would have

6   been judicially estopped from prosecuting this action due to his failure to disclose, it is

7   appropriate to judicially estop the Trustee from recovering damages in excess of that

8   necessary to satisfy Latelle's creditors.

9         As the Trustee points out, AutoZone's present motion is not the first time that the

10   issue of judicial estoppel has been raised relative to Latelle's failure to disclose his FMLA

11   claim in his bankruptcy proceeding.  Before the Trustee was substituted as the real party in

12   interest, AutoZone sought summary judgment against Latelle on this basis.  Ultimately, the

13   U.S. Trustee re-opened Latelle's bankruptcy and appointed the Trustee as Trustee of

14   Latelle's bankruptcy, and the Trustee sought to be substituted as the real party in interest.

15   Of particular note, however, is that Latelle (represented by Gebhart) fully briefed an

16   opposition to AutoZone's motion for summary judgment on the basis that Latelle was

17   judicially estopped from prosecuting this action.  Latelle also opposed on the basis that

18   discovery remained necessary to decide the motion, which discovery consisted of his own

19   deposition.  Further, the Trustee filed a response to AutoZone's motion for summary

20   judgment, in which she agreed with AutoZone that Latelle should be judicially estopped

21   from prosecuting this action (see Docket #59).  In that response, the Trustee accurately

22   summarized the relevant law and the facts of this case:

23        After [Latelle's bankruptcy] case was reopened, the Debtor filed
          amended schedules on September 28, 2011, which listed claims for "loss of
24        pension benefits" and "loss of future wages" against Autozoners, LLC.

25   _____

26        [4]   AutoZone also seeks a judgment on the Trustee's retaliation claim.  In her
     response, the Trustee indicates that she agrees that she cannot maintain the claim.

1
2
3
4

The description of the claims in the schedules is inaccurate. The Trustee assumes that the debtor is referring to his wrongful discharge and FMLA claims, which are clearly property of the estate. It seems apparent to her that the Debtor is continuing his pattern of lack of candor and obfuscation toward the bankruptcy court. The Trustee believes that this is a textbook case for the application of judicial estoppel.  Further, Ninth Circuit law is very clear.

5
6
7

Judicial estoppel is an equitable doctrine, which precludes a party from gaining an advantage by asserting one position and then later taking an inconsistent position. It has been applied to cases of nondisclosure of assets in bankruptcy schedules.  *See, Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001); *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 444 (9th Cir. 1992).

8
9
10
11
12
13

The bankruptcy estate includes "all legal or equitable interests of the debtor" as of the date of filing. 11USC §541(a)(1). The debtor must file a list of creditors and a schedule of assets and liabilities. 11 USC §521(a)(1). A debtor has a duty to disclose all assets, including legal claims. Assets of the estate include debtor's causes of action and claims. *Cusano v. Klein*, 264 F.2d 936.945 (9th Cir. 2001). The debtor's duty to disclose assets is a continuing obligation. *DePasquale v. Morgan Stanley Smith Barney, LLC*, 2011 WL  3703110 (D.N.J. August 23, 2001). The debtor must amend schedules and disclose claims when the debtor becomes aware of them. *Id.* at 3; *Hamilton*, 270 F.3d at 784. A debtor must swear to the accuracy of his schedules under oath.

14
15
16
17
18

In *Hamilton*, the court listed discretionary factors to consider in applying judicial estoppel. First, a party's later position must be "clearly inconsistent" with its initial position. Second, the court may consider in its discretion whether the party persuaded a court to accept the party's earlier position, so that there is a perception that a court was misled. Another consideration is whether the party seeking to assert the inconsistent position gained an unfair advantage or imposed an unfair detriment on another party. *Hamilton*, 270 F.3d at 782-83.

19
20
21
22
23

Judicial estoppel can apply to a party asserting two inconsistent positions in the same litigation or asserting inconsistent positions in different cases. *Id.* at 783.  Failing to list a claim on bankruptcy schedules and then subsequently suing a party on the unscheduled claim is a clearly inconsistent *position*. Id. at 784. Failure to give notice of a cause of action in bankruptcy schedules estops a debtor from prosecuting that cause of action.  Hay, 978 F.3d at 557. The law in the Ninth Circuit is very consistent and draws a bright line. *See, also, In re An-Tze Cheng*, 308 B.R. 448 (Bankr. 9th Cir. 2004) (Bankruptcy Appellate Panel distinguished judicial estoppel between application to actions of debtor and application to actions of trustee).

24
25
26

The claims in this case arose pre-petition in April and June of 2010. They were never disclosed during the pendency of the bankruptcy. The Debtor was represented in a dischargeability action in the bankruptcy, brought by Chase Bank USA, NA, by Michael T. Gebhart of Peel Brimley, LLP. Gebhart, of course, filed the complaint in this action. Debtor

1  failed to disclose initiating this action. Gebhart failed to seek employment in
2  the bankruptcy case.

3      The Autozoners case was filed post-petition, not pre-petition. The
   Debtor and Gebhart had full knowledge that the debtor had sought
4  bankruptcy protection and had received a discharge. Even after Autozoners
   filed its motion for summary judgment, which clearly set out the relevant law
5  and the Debtor's continuing duty to disclose assets, the Debtor failed to
   reopen his bankruptcy case and to amend schedules. It was only after he was
6  caught out by the Trustee and the United States Trustee's Office reopened
   the case that the Debtor filed amended schedules. Nor was the failure to
7  disclose inadvertent.  A debtor's failure to disclose is only inadvertent when
   the debtor either lacks knowledge of the undisclosed claims or has no motive
8  to conceal them. Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir.
   2003). The Barger court rejected the debtor's belated attempt to reopen her
9  case and to amend her schedules to include a discrimination claim. She did
   so only after a motion for summary judgment was filed against her, as
10 occurred in this case. The court concluded that the debtor's disclosure upon
   reopening of the case deserved "no favor."

11      Allowing [a debtor] to back-up, reopen the bankruptcy
        case, and amend his bankruptcy filings, only after his omission
12      has been challenged by an adversary, suggests that a debtor
        should consider disclosing potential assets only if he is caught
13      concealing them. This so-called remedy would only diminish the
        necessary incentive to provide the bankruptcy court with a
14      truthful disclosure of the debtor's assets.

15 Id. at 1297 quoting Barnes v. Pemco Aeroplex, Inc., 291 F.2d 1282, 1288
   (11th Cir. 2002).
16
17      The Debtor had an ongoing duty to disclose assets and claims in his
   bankruptcy case.

18     The Court is also constrained to agree with the Trustee's earlier observations and
19 conclusions that "[Latelle] failed to disclose the action before this Court," and "[Latelle] may
20 not be allowed to benefit to the detriment of his creditors."  For the reasons previously
21 identified by the Trustee, this Court would have found Latelle judicially estopped from
22 prosecuting this action and granted summary judgment in favor of AutoZone had the
23 Trustee not moved to be substituted.
24     The Court would further recognize, however, that equitable concerns do not merely
25 suggest that Latelle should not be permitted to benefit to the detriment of his creditors for
26 his failure to disclose, but that Latelle should not be permitted to benefit from his failure

15

even if it is not to the detriment of his creditors.  Though not specifically considered by the Ninth Circuit, the Fifth Circuit considered a somewhat similar situation in which it was determined that the debtor should be judicially estopped from prosecuting a claim, but that it would be inequitable to the creditors to judicially estop the trustee from pursuing the debtor's judgment.  *See*, *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011).  The remedy fashioned by the Fifth Circuit was to estop the debtor from collecting or receiving any money from the judgment, but allow the trustee to recover damages on behalf of the estate for distribution only to the creditors.  The Eleventh Circuit has similarly recognized the appropriateness of limiting trustees to recovering damages only for the estate's creditors and preventing a windfall to a non-disclosing debtor.  *See, Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004).

Accordingly, the Court will grant AutoZone's motion for partial summary judgment, and will cap the Trustee's recovery of damages to that amount necessary to pay the timely-filed claims of Latelle's creditors.  Therefore, for good cause shown,

THE COURT **ORDERS** that the Trustee's Motion for Partial Summary Judgment (#93) is GRANTED;

THE COURT FURTHER **ORDERS** that AutoZoner LLC's Motion for Partial Summary Judgment (#100) is GRANTED;

THE COURT FURTHER **ORDERS** that the Trustee's Motion to Strike (#105) is DENIED;

THE COURT FURTHER **ORDERS** that the Trustee's Motion for Hearing (#106) is DENIED.

DATED this _____ day of March, 2014.

_____
Lloyd D. George
United States District Judge