# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

YVETTE WEINSTEN, Trustee of the
George J. Latelle, Jr., Bankruptcy
Estate,

     Plaintiff,

v.

AUTOZONERS LLC; AMY NAGLE;
DOES I through V; and, DOE
CORPORATIONS VI through X.

     Defendants.

Case No. 2:11-cv-00591-LDG (CWH)

**ORDER**

On March 6, 2014, this Court granted partial summary judgment in favor of plaintiff Yvette Weinstein (as trustee of the bankruptcy estate of George Latelle, Jr.) against defendant Autozoners LLC (AutoZone), concluding that Autozone was liable for interfering with Latelle's rights under the Family and Medical Leave Act (FMLA). (#114).  The Court also granted partial summary judgment in favor of AutoZone, however, concluding that Weinstein was limited to recovering damages in an amount not greater than necessary to satisfy the timely-filed claims of the creditors of Latelle's bankruptcy estate. *Id.*

On March 18, 2014, Weinstein filed a motion for attorney's fees and costs (#115). On April 3, 2014, AutoZone filed a motion to amend or alter the March 6, order pursuant to

1  Rule 59, seeking to establish the amount of damages owed to Weinstein as a sum certain
2  (#117).  Weinstein subsequently filed an opposition to AutoZone's Rule 59 motion and
3  further filed a countermotion for relief from the March 6 grant of partial summary judgment
4  pursuant to Rule 59(e) and 60(b) (#121, 122, 123, 124). AutoZone then filed an opposition
5  to Weinstein's counter-motion for relief from the March 6 order, as well as a reply to her
6  opposition to its Rule 59 motion. (#125, 126). Weinstein filed a reply in support of her
7  counter-motion for relief. (#127).

8  **Background**

9       George Latelle, Jr., was terminated by his employer, AutoZone, on April 26, 2010.
10  (#75). On April 27, 2010, one day following his termination, Latelle filed for bankruptcy. *Id.*
11  He  did not identify, as an asset of the estate, any actual or potential legal claim. (#113).
12  Latelle was discharged from bankruptcy on August 4, 2010, and proceedings were
13  terminated on September 28, 2010. *Id.*

14       On April 18, 2011, Latelle filed an FMLA claim against AutoZone. *Id.* Latelle was
15  represented by attorney Michael Gebhart in both Latelle's bankruptcy proceedings and
16  FMLA claim. *Id.* On July 21, 2011, AutoZone moved for summary judgment, arguing that
17  Latelle was estopped from prosecuting this action because he failed to disclose the lawsuit
18  as an asset of the bankruptcy estate. Latelle opposed, arguing that a question of fact
19  existed as to whether he was aware of the claim while the bankruptcy was pending. (#27).

20       On August 22, 2011, Yvette Weinstein, Trustee of Latelle's bankruptcy proceedings,
21  received a letter from AutoZone's counsel informing her of this FMLA suit. She therefore
22  moved to reopen Latelle's bankruptcy, which occurred on September 22, 2011. (#113).
23  Latelle subsequently filed amended schedules for loss of pension benefits and loss of
24  future wages in the bankruptcy action, but again failed to disclose the instant suit.
25  Weinstein then moved to be substituted as the real party in interest in this suit. In so doing,
26  she asserted that "[i]t seems apparent to her that the Debtor is continuing his pattern of

2

1    lack of candor and obfuscation toward the bankruptcy court. Trustee believes that this is a

2    textbook case for the application of judicial estoppel." (#75).

3        On March 6, 2014, this Court held that AutoZone was liable for Latelle's FMLA

4    claim. (#113). However, this Court also held that AutoZone's damages would be "[l]imited

5    to an amount not greater than necessary for Yvette Weinstein, Trustee, to satisfy the

6    timely-filed claims of the creditors of the bankruptcy estate of George J. Latelle, Jr." *Id.*

7    Because Latelle had wrongfully failed to inform the Bankruptcy court of his FMLA claim,

8    this Court held that no amount of such damages may be distributed to Latelle.

9        Subsequent to the March 6 order, Weinstein filed a motion on March 18, 2014, to

10   collect attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3) and FRCP 54(d).

11   (#115). AutoZone moved pursuant to Rule 59 to amend or alter the March 6 judgment to

12   include the precise amount that it owes to Weinstein. (#117). On April 11, 2014, Weinstein

13   filed an opposition to AutoZone's Rule 59 motion, as well as a counter-motion for relief

14   from the grant of partial summary judgment, pursuant to Rule 59(e) and 60(b), (#121, 123),

15   along with memoranda to support her opposition and counter-motion. (#122, 124). In

16   Weinstein's counter-motion, she asserts that "this Court applied a wrong standard in

17   concluding that the damages AutoZone must pay are limited to those necessary to satisfy

18   creditors." (#122).

19   **Standard of Review for Motion to Alter or Amend Judgment**

20       Rule 59(e) of the Federal Rules of Civil Procedure provides for motions to alter or

21   amend a judgment. A motion to alter or amend a judgment must be filed no later than 28

22   days after the entry of the judgment. *Id.* The Court generally considers four circumstances

23   in granting a motion to alter or amend a judgment. These include: (1) to correct manifest

24   errors of law or fact upon which the judgment rests; (2) to present newly discovered or

25   previously unavailable evidence; (3) to prevent manifest injustice; or (4) if the amendment

26   is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d

1101, 1111 (9th Cir. 2011). However, courts are not limited to these four circumstances in granting a motion to alter or amend a judgment. *Id.* In considering such a motion, a district court "enjoys considerable discretion." *Id.* However, such motions should be "used sparingly," because amending a judgment remains "an extraordinary remedy." *Id.*

**Analysis**

   I.     **Trustee's Counter-motion for Relief from Grant of Partial Summary Judgment Pursuant to 59(e) and 60(b) Is Denied.**

   In Weinstein's counter-motion for relief from the March 6 order, she agrees with the Court's decision to hold AutoZone liable. (#122). However, she argues that the Court applied the wrong standard in limiting the damages to the amount necessary to satisfy the debt owed to creditors. *Id.* AutoZone argues that Weinstein is not deserving of a Rule 59(e) or 60(b) motion because, (1) her Rule 59(e) motion is untimely; (2) her Rule 60(b) motion is untimely; and (3) her Rule 60(b) motion lacks merit.

   Weinstein has agreed that her 59(e) motion is untimely. (#127).  However, she asserts (1) that her 60(b) claim is timely; (2) that her motion is meritorious, because controlling Ninth Circuit precedent was not previously considered by this Court; and 3) that an evidentiary hearing is needed. *Id.*

   The parties dispute whether Weinstein's 60(b) motion was brought under Rule 60(b)(1) or Rule 60(b)(6). (#125, 127). This determination impacts the timeliness of Weinstein's motion, and therefore whether it was procedurally proper.  However, the Court need not reach this issue.  Assuming the motion was procedurally proper, the Court will nevertheless deny it on substantive grounds.

   Weinstein asserts in her counter-motion that this Court applied the wrong legal standard in its March 6 order. (#122). In the order, this Court estopped Latelle from raising an FMLA claim due to his failure to include the claim in his bankruptcy proceedings. (#75). Weinstein argues that the Court did not consider whether this failure was due to

4

1   inadvertence or mistake, as required by *Ah Quin v. County of Kauai Dept. Of Transp.*, 733
2   F.3d 267, 271 (9th Cir. 2013). (#122, 2:9-17).

3         "Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at
4   270 (citing *New Hampshire v. Main*, 532 U.S. 742, 750 (2001)). The purpose of judicial
5   estoppel is to "protect the integrity of the judicial process by prohibiting parties from
6   deliberately changing positions according to the exigencies of the moment." *Id.* In a
7   bankruptcy case, the federal courts have developed a standard rule that, if a plaintiff-debtor
8   "omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a
9   discharge, judicial estoppel bars the action." *Ah Quin,* 733 F.3d at 271 (citing *Payless*
10   *Wholesale Distribs., Inc. V. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993);
11   *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)).
12   However, the Supreme Court held in *New Hampshire* that judicial estoppel may not be
13   applied when a party's failure was "based on inadvertence or mistake.*" New Hampshire*,
14   532 U.S. at 749-50. Many circuits interpreted this exception narrowly, asking only whether
15   the debtor knew about the claim when filing the bankruptcy schedules. *Id.*

16         In *Ah Quin*, the Ninth Circuit ruled that the relevant inquiry is "not limited to the
17   plaintiff's knowledge of the pending claim . . . the relevant inquiry is, more broadly, the
18   plaintiff's *subjective intent* when filling out and signing the bankruptcy schedules." *Ah Quin*,
19   733 F.3d at 276-277 (emphasis added). In *Ah Quin*, a plaintiff did not disclose her pending
20   discrimination claim during bankruptcy proceedings. *Id.* at 277-78. The discrimination claim
21   was not disclosed until the plaintiff's attorney brought the unrevealed claim to the
22   defendant's attention, after the closing of the bankruptcy case. *Id.* The Ninth Circuit ruled
23   that the plaintiff was not judicially estopped, because the plaintiff filed an affidavit in which
24   she swore that she did not think she had to disclose her pending lawsuit when she
25   reviewed the bankruptcy schedule. *Id.* The court ruled that the relevant inquiry is to the
26   plaintiff's subjective intent when filling out and signing the bankruptcy schedules. *Id.* 276-

1   277. The court further held that it should interpret mistake and inadvertence broadly, rather

2   than narrowly. *Id.* at 277.

3        AutoZone argues in its opposition to the countermotion that *Ah Quin* does not

4   compel this Court to reconsider its March 6 order because *Ah Quin* merely states that

5   courts "must consider the debtor's state of mind when deciding whether a bankruptcy filing

6   was made by inadvertence or mistake.*"* (#125). AutoZone argues that this Court already

7   took the debtor's state of mind into consideration in its partial grant of summary judgment.

8   This Court agrees.

9        Here, like in *Ah Quin*, where the plaintiff did not disclose the pending discrimination

10   claim, Latelle did not reveal his potential FMLA claim to the bankruptcy court before the

11   bankruptcy case closed. (#113). Thus, the *Ah Quin* interpretation of inadvertence and

12   mistake governs this case. However, because this Court already considered Latelle's

13   subjective intent in its March 6 order, there is no need to vacate the judgment. (#75, #113).

14        In *Dzakula*, the plaintiff filed for bankruptcy, but failed to list her discrimination action

15   as an asset on her bankruptcy schedules, and judicial estoppel was applied. *Dzakula v.*

16   *McHugh*, 746 F.3d 399, 400 (9th Cir. 2014). *Ah Quin* was decided while her appeal was

17   pending, and the plaintiff therefore argued that her case had been decided under the

18   wrong standard. *Id.* at 401. The Ninth Circuit disagreed, and held that the district court had

19   applied the proper standard even before *Ah Quin* was decided. *Id.*

20        Here, as in *Dzakula*, the Court did not cite *Ah Quin* but did apply the proper

21   standard. (#113, 114). In a brief filed with this Court prior to the March 6 order, Weinstein

22   argued:

23               "It seems apparent that the Debtor, [Latelle], is continuing
            his pattern of lack of candor and obfuscation toward the

24            bankruptcy court. The Trustee believes that this is a textbook
            case for the application of judicial estoppel." (#59, 3: 17-22).

25

26              "The Debtor and Gebhart had full knowledge that the
            debtor had sought bankruptcy protection and had received a

discharge. Even after AutoZoners filed its motion for summary judgment, which clearly set out the relevant law and the Debtor's continuing duty to disclose assets, the Debtor failed to reopen his bankruptcy case and to amend schedules. It was only after he was caught out by the Trustee and the United States Trustee's office reopened the case that the Debtor filed amended schedules. Nor was the failure to disclose inadvertent."

(#59, 5:1-7).

This Court carefully considered this analysis and explicitly adopted it within the March 6 order, noting it "accurately summarized the relevant law and the facts of this case." (#75, 13:21-22).  The Court considered Latelle's subjective intent when deciding the March 6 order. Therefore, although this Court did not cite to *Ah Quin*, it did apply the proper legal standard.

Weinstein argues that *Dzakula* is inapplicable, because the Ninth Circuit states in *Dzakula* that it is significant that the plaintiff did not sign any declaration regarding her subjective intent. (#127). Here, Latelle signed an affidavit and testified in a deposition that he was never aware of his FMLA claim. (#122). Weinstein argues that this Court "must credit Latelle's sworn affidavit and sworn deposition testimony as true." (#127, 2:6-15). Weinstein therefore concludes that this Court must vacate the March 6 order and hold an evidentiary hearing. *Id.*

However, the Ninth Circuit has held that not all affidavits must be credited by the courts. In *F.T.C. v. Publ'g Clearing House Inc.*, the Ninth Circuit held that "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Id.* at 104 F.3d 1168, 1171 (9th Cir. 1997). Further, the Supreme Court also held that when opposing parties tell stories in which one is contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

1    Following *F.T.C.* and *Scott*, this Court finds that Latelle's affidavit and deposition are

2  self-serving and lack factual basis. (#113). Weinstein has previously taken the position in

3  this litigation and argued to the Court that Latelle and Gebhart knew about the claim,

4  lacked candor, and followed a pattern of obfuscation.  Weinstein previously argued that this

5  was "a textbook case" for judicial estoppel. (#59). She cannot now reverse course, change

6  her position, and argue that Latelle's affidavits should be credited, particularly given that

7  she argued to this court, in seeking to replace Latelle as plaintiff, that Latelle should be

8  judicially estopped from maintaining this litigation because of his failure to disclose this

9  action in the bankruptcy proceeding.  In addition, while the plaintiff in *Ah Quin* later

10  informed the defendant of her previous bankruptcy proceedings, Latelle never informed

11  AutoZone of his bankruptcy proceedings. Nor did he ever inform the Bankruptcy Court of

12  this suit, even after he filed this suit. Moreover, Latelle was being represented by the same

13  attorney in both the bankruptcy case and the FMLA claim. Latelle's affidavits have been

14  discredited by the record, and no evidentiary hearing is needed. Consideration of the

15  affidavits does not alter this Court's March 6 decision.

16    The March 6 order did consider Latelle's subjective intent in failing to list his FMLA

17  claim in his bankruptcy proceedings. Thus, this Court applied the correct legal standard in

18  determining that damages are limited to the amount that satisfies the creditor's timely-filed

19  claims, and this Court will deny the Plaintiff's counter-motion to vacate the March 6

20  judgment.

21    **II.    Defendants' Motion to Amend or Alter the Partial Summary Judgment to
          Include the Precise Damages Owed to Plaintiff.**

22
23    AutoZone filed a Rule 59 motion, seeking to include a precise amount of damages

24  owed to Weinstein. (#117). In the March 6 order, this Court limited Weinstein's damages to

25  an amount not greater than necessary for her to satisfy the timely-filed claims of the

26

1  creditors of the bankruptcy estate of George Latelle, Jr. (#114). Further, this Court also

2  specified that no amount of such damages may be distributed to Latelle. Id.

3       Weinstein argues, in opposition to AutoZone's  Rule 59 motion, (1) that AutoZone

4  failed to state a basis to alter or amend the grant of partial summary judgment; (2) that the

5  amount necessary to satisfy the timely-filed claims of the Latelle estate includes all claims

6  on the claim register; and (3) that the amount necessary to satisfy the timely-filed claims of

7  the Latelle estate includes administrative fees. (#124). AutoZone replied to Weinstein's

8  opposition, arguing (1) that a motion to amend the March 6  order to clarify the amount of

9  damages is proper; (2) that Weinstein's request to increase the amount of damages is

10  procedurally improper; (3) that AutoZone is only liable for an amount equivalent to the

11  timely-filed claims; (4) that damages should not be increased to include administrative

12  expenses; and (5) that even if the Court were inclined to include administrative expenses,

13  the administrative expenses claimed by the trustees are excessive.  For the reasons stated

14  below, the Court will grant the defendants' motion, and will amend the March 6  order to

15  specify the amount of damages necessary to cover the timely-filed claims of creditors and

16  appropriate attorney's fees.  The amount of damages will not include the additional,

17  untimely claims on the claim register, nor will it include the payment of administrative fees.

18            **A.**  **AutoZone did not fail to state a basis to alter or amend the grant**
                 **of partial summary judgment.**

19

20       Weinstein argues that Rule 59(e) is limited to four circumstances, and should only

21  be granted (1) if the motion is necessary to correct manifest errors of law or fact upon

22  which the judgment rests; (2) if the motion is necessary to present newly discovered or

23  previously unavailable evidence; (3) if the motion is necessary to prevent manifest injustice;

24  or (4) if the motion is justified by an intervening change in controlling law. *Allstate Ins. Co.*

25  *v. Herron* , 634 F.3d 1101, 1111 (9th Cir. 2011). However, the Ninth Circuit has also stated

26  that courts considering a Rule 59 motion are not limited to these four circumstances. *Id.*

This Court determined in the March 6 order that AutoZone's damages are limited to timely-filed claims. By amending the March 6 order to include a specific amount of damages, this Court is simply expediting the final resolution of this case.  Indeed, it appears to the Court that Weinstein's own motion for attorney's fees and costs is appropriate only upon a final entry of judgment, and a final entry of judgment requires a determination of the specific amount of damages owed.  Thus, AutoZone's Rule 59(e) to alter or amend judgment is proper.

**B.    The Amount Necessary to Satisfy the Timely-filed Claims of the Latelle Estate Does Not Include All Claims on the Claims Register.**

Weinstein argues that the amount necessary to satisfy the timely-filed claims of the Latelle estate includes all claims on the claim register. (#124). Weinstein argues that although only two banks filed timely claims against Latelle's estate, she was able, as Trustee, to file claims on behalf of the other creditors under 11 U.S.C. § 501(c).  Section 501(c) states, "if a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim."

However, AutoZone argues that although 501(c) does allow Weinstein to file claims on behalf of the creditors, it does not give her an unlimited right to do so. (#126). Under Rule 3004 of the Federal Rules of Bankruptcy Procedure,

> [I]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. Fed. R. Bankr. P. 3004.

Therefore, AutoZone argues Weinstein's additional claims on the claim register are untimely.

On November 22, 2011, Weinstein issued a scheduling order in the bankruptcy action whereby all of Latelle's creditors were to submit their claims on or before February 23, 2012. (#125). Only two banks, Chase Bank USA NA and Pentagon Federal Credit

Union, filed timely claims. No other creditors submitted claims. (#117).  On April 3, 2014, more than two years after the March 2012 deadline for Weinstein to file additional proofs of a claim, she filed four claims on behalf of other creditors. *Id.* These submissions were untimely by more than two years. Only the timely-filed claims from Chase Bank and Pentagon Federal Credit Union will be included as damages, as per the March 6 order.

**C.   The Amount Necessary to Satisfy the Timely-filed Claims of the Latelle Estate Does Not Include Administrative Fees.**

Weinstein argues in her opposition to AutoZone's Rule 59 motion that the amount sufficient to satisfy the claims must include administrative expenses. (#124, 6:4-8:5). Under § 503(a) of the Bankruptcy Code, "[a]n entity may timely file a request for payment of an administrative expense."  11 U.S.C. § 503(a).  This rule permits parties to seek the payment of administrative fees through the bankruptcy courts.  It is also through this rule, in conjunction with the list of payment priorities established by § 507, that bankruptcy courts retain their authority to oversee the allocation of available funds between various parties involved in a bankruptcy, including trustees who may be entitled to administrative fees. The question of administrative fees is therefore one that the Court will defer to the bankruptcy court.

This Court will not, however, increase AutoZone's damages solely from an expectation that a bankruptcy court may elect to allocate administrative fees to Weinstein. The March 6 order expressly limited AutoZone's damages to the amount necessary to compensate creditors who filed a timely claim against the Latelle estate. The payment of administrative fees is elective, rather than mandatory.  Therefore, the Court does not view such administrative fees as necessary to compensate creditors with claims against the estate, and will not increase AutoZone's damages to account for such fees.

**D.    The Amount of Timely-Filed Creditor Claims**

The record establishes that only Chase Bank and Pentagon Federal Credit Union timely filed creditors' claims in Latelle's bankruptcy.  The total amount of their claims is $13,630.89.  Accordingly, the Court will amend the March 6 order to specify that AutoZone is liable to Weinstein, as trustee for Latelle's bankruptcy estate, for $13,630.89 in damages, in addition to attorney's fees as calculated below.

**III.    Attorney's Fees and Costs**

Unlike elective administrative fees, attorney's fees are mandated under the FMLA, and the Court will therefore include appropriate attorney's fees in determining the amount owed by AutoZone to Weinstein. Under the FMLA, "a plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant in addition to any judgment awarded to the plaintiff." 29 U.S.C.§ 2617(a)(3).

On March 18, 2014, Weinstein filed a motion for fees and costs pursuant to the FMLA. (#115). Weinstein asserts that because she was a prevailing party in the FMLA interference claim, she is entitled to recover attorney's fees and costs. (#115). Weinstein asks this Court to award her: (1) Reasonable attorney's fees and costs for Specific Counsel (Gebhart) of $58,837.39; (2) Reasonable attorney's fees for General Counsel (Sullivan Hill) of $21,522.50; and (3) Reasonable Expert Witness expenses of $6,569.00. (#115). However, AutoZone argues in its opposition that Weinstein's request is excessive. (#116). AutoZone argues: (1) fees incurred prior to Weinstein's involvement in the case should not be included; (2) Weinstein cannot recover fees for Gebhart and Sullivan Hill's work on the unsuccessful FMLA retaliation; (3) Weinstein cannot recover fees for Gebhart and Sullivan Hill's work on matters before the Bankruptcy Court; (4) Sullivan Hill's hourly rate is unreasonable; (5) Weinstein cannot recover Sullivan Hill's fees that are duplicative of Gebhart's fees; (6) Weinstein cannot recover Sullivan Hill's fees related to the motion to substitute; (7) the expert fee of Randall Scott should be denied in its entirety; (8) all

1   remaining attorney's fees be reduced by no less than 50% to reflect the minimal success of

2   the Trustee's surviving claims; and (9) all costs should be denied. (#116).

3                    **A.    Fees Incurred Prior to Weinstein's Involvement in the Case**

4           AutoZone argues that Weinstein is attempting to recover $10,268.71 that was

5   incurred prior to March 27, 2012, the date this Court substituted Weinstein for Latelle as

6   the plaintiff, (#75), and that these fees should therefore be denied. (#116). Weinstein

7   argues that "all of the work performed by Gebhart was adopted and ratified by the trustee

8   as necessary and reasonably performed on behalf of the bankruptcy estate and benefitting

9   the estate." (#118, 1:22-23).

10          The Court agrees with Weinstein that she can recover fees for work Gebhart

11  performed prior to March 27, 2012, to the extent that such work was necessary to the

12  litigation of the FMLA claim on which Weinstein ultimately succeeded.  For example, on

13  December 16, 2010, Gebhart described his work as "research[ing] current case law and

14  begin drafting federal court complaint against AutoZone regarding FMLA interference."

15  (#115: Exhibit A). On, February 3, 2011, he revised this complaint, and on February 14 he

16  began working on discovery. On four dates in June, he began preparing for depositions

17  and disclosures. This preparation was necessary groundwork for the FMLA claim, to which

18  Weinstein was subsequently substituted as plaintiff. AutoZone cites to no authority in

19  arguing that a substituted party cannot receive attorney's fees for relevant work prepared

20  prior to the substitution.

21          The Court would note that, in reviewing the fees being requested by Weinstein,

22  Gebhart has requested fees and costs associated with her efforts to re-open Latelle's

23  bankruptcy estate.  Such work was not necessary to the Trustee's litigation of the FMLA

24  claim, and will be discounted.  Therefore, the Court will disallow $225 in attorney's fees,

25  and $101.62 in costs, as not incurred for the prosecution of the FMLA claim.

26

### B.   Gebhart and Sullivan Hill's Work on the Unsuccessful FMLA Retaliation Claim.

AutoZone argues that Weinstein's attorney's fees should be reduced by 50% because Weinstein was only successful on one of the two FMLA claims raised. (#116). Weinstein replies by noting that the early work preparing for both claims "arose from the same set of facts" and by arguing that she voluntarily dismissed the retaliation claim "not because she could not prevail on the claim, but merely for judicial economy." (#118, 3).

Under the case law cited by AutoZone, a court "may" reduce fees when there is partial or limited success. (#116). While Autozone is correct that Weinstein only succeeded on her interference claim, the Court disagrees that attorney's fees should therefore be reduced by 50%.  As Weinstein argues, the claims arose from the same set of facts. Consequently, much of the work was necessary to pursue both claims.

### C.   Gebhart's Work on Matters Before the Bankruptcy Court.

AutoZone argues that Weinstein should not recover fees that are related to Latelle's bankruptcy case. (#116). In its opposition, AutoZone argues that .9 hours claimed by Gebhart and 2.8 hours claimed by Sullivan Hill should be excluded. *Id.* Weinstein argues that the hours cited by AutoZone referred to hours spent meeting with AutoZone counsel, determining whether Weinstein should reopen the bankruptcy proceedings and join the FMLA claim. (#118). She argues that these hours were relevant to the success of the FMLA claim. *Id.*

The Court disagrees with Weinstein's argument that these hours were relevant to the success of the FMLA claim. The reopening of the bankruptcy proceedings only occurred because Latelle failed to disclose the soon-to-be-filed FMLA claim. AutoZone's attorney would not have needed to meet with Gebhart and Sullivan Hill to discuss reopening the case if the claim had been disclosed prior to AutoZone's motion for summary judgment. The Court agrees that these hours arose separate from the litigation of the

1   FMLA claim.  The Court has previously discounted Weinstein's request for fees and costs

2   incurred by Gebhart in connection with the bankruptcy action.  The Court will additionally

3   discount Weinstein's fee request by $700 (representing 2.8 hours at an hourly rate of $250)

4   for fees incurred by Sullivan Hill in connection with the bankruptcy case.

5                          **D.    Sullivan Hill's Fees**

6          AutoZone asserts several challenges to the fees being requested by Weinstein that

7   were incurred by Sullivan Hill.  AutoZone argues Sullivan Hill has requested fees for work

8   performed in retaining Gebhart, and for work that is duplicative of work performed by

9   Gebhart.  Additionally, AutoZone argues that "[Weinstein] requests a total of $1,117.50 for

10  conferring and communicating with Gebhart regarding his representation of the Trustee

11  and for reviewing the Retainer Agreement." (#116).  AutoZone further points out that, after

12  the Trustee retained Gebhart, much of Sullivan Hill's work consisted of reviewing pleadings

13  and communicating with Gebhart.  AutoZone also challenges fees incurred by Sullivan Hill

14  related to Latelle's bankruptcy case.  Autozone also challenges Sullivan Hill's fees to the

15  extent that they were necessitated by Latelle's failure (while being represented by Gebhart)

16  to disclose the FMLA claims in the bankruptcy and to the trustee, which ultimately resulted

17  in the involvement of two law firms representing Weinstein in this matter.  Weinstein

18  responds that "she requested that Sullivan Hill monitor the case and coordinate with

19  Gebhart, and if necessary, with the court." (#118).  She further argues that AutoZone

20  requested her intervention in this matter.

21         In reviewing Sullivan Hill's billing statement, and the docket of this case, the Court is

22  struck by the number of hours incurred by Sullivan Hill as a result of Latelle's failure to

23  disclose his FMLA claim in the bankruptcy.  For example, while it is accurate to observe

24  that Weinstein's substitution was necessary to a successful prosecution of Latelle's FMLA

25  claim, it is also accurate to observe that the substitution was caused by Latelle's failure to

26  disclose his FMLA claim.  Work performed in relation to the substitution was not necessary

1   to prosecuting the merits of the FMLA claim, but to limiting the impact of a procedural bar

2   caused by Latelle's conduct while being represented by Gebhart.  Further, Weinstein has

3   not shown that Sullivan Hill's monitoring of Gebhart's work was necessary for the

4   prosecution of the FMLA claim.  As Weinstein argues, "given the posture of the AutoZone

5   case, the Trustee also required advice from counsel with expertise in bankruptcy matters."

6   The posture of the AutoZone case was a posture created by Latelle.  While Weinstein has

7   a right to recover attorney's fees for the prosecution of an FMLA claim, she cannot recover

8   fees incurred caused by the debtor's failure to disclose his FMLA claim in his bankruptcy.

9   This includes Sullivan Hill's work on bankruptcy matters, Sullivan Hill's work related to the

10  motion to substitute (including Sullivan Hill's work related to Latelle's countermotion to

11  stay), Sullivan Hill's work opposing AutoZone's first motion for summary judgement (as that

12  motion was brought on the ground that Latelle was judicially estopped from prosecuting his

13  FMLA claim because of his failure to disclose his FMLA claim in his bankruptcy), Sullivan

14  Hill's work related to responding to Gebhart's proposal that he substitute as counsel, and

15  work related to retaining Gebhart as substitute counsel.  The Court will also discount

16  Sullivan Hill's monitoring of Gebhart's work, as the Court cannot conclude that such work

17  was necessary to the prosecution of the merits of the FMLA claim. Having discounted work

18  that appears related to the above items, the Court will allow Weinstein to recover fees for

19  10 hours of work performed by Sullivan Hill.

20      AutoZone argues that Sullivan Hill's $350 and $375 hourly rates are unreasonable,

21  and should be lowered to $250 per hour, an hourly rate consistent with the fees requested

22  by Gebhart. Weinstein's motion includes an affidavit from Sullivan Hill's attorney in which

23  she states, "the fees prayed for in this application are based on the normal and customary

24  hourly charges of Sullivan Hill. Such fees are comparable to ones which would be charged

25  for services provided by the firm in non-bankruptcy type cases. Such fees are comparable

26  to ones which would be charged for services provided by other firms in the Nevada

1  marketplace." (#115, Exhibit B). As noted by AutoZone, however, Weinstein has requested,

2  as a reasonable hourly rate, the hourly rate of $250 for work performed by Gebhart.  The

3  Court will limit the hourly rate for work performed by Sullivan Hill to $250 per hour.

4  Accordingly, the Court will award Weinstein the amount of $2,500 for attorney's fees

5  incurred by Sullivan Hill.

6              **E.    The Expert Fee of Randall Scott**

7              AutoZone notes that FMLA permits reasonable expert witness fees, but argues that

8  because Weinstein's expert, Randall Scott, produced a report that "had no bearing on the

9  resolution" of the case, expert fees should be denied. Weinstein argues the expert was

10  retained during discovery and "changed the dynamic of this case." (#118). AutoZone cites

11  no authority for the proposition that expert fees will only be paid if the expert's work

12  impacted the damages in the case.

13              This Court finds that Weinstein retained the expert for reasonable purposes, and will

14  award the entire amount of expert witness fees requested by Weinstein.

15              **F.    Limited Award of Damages on the FMLA Claim**

16              AutoZone argues that the lodestar amount for the above determination of attorney's

17  fees should be reduced by not less than 50% to reflect the minimal and limited award of

18  damages on Weinstein's FMLA claim. (#116). AutoZone cites to two cases, one from the

19  District of Oregon, and one from the Northern District of California, in which attorneys' fees

20  were reduced by 35% and 40% respectively, based on the parties' limited success at trial.

21  *Farrell v. Tri-County Metropolitan Transp. Dist. of Oregon*, 2006 WL 1995594; *Navarro v.*

22  *General Nutrition Corp.*, 2005 WL 2333803. AutoZone further notes that while the report of

23  Weinstein's expert estimated damages in excess of $400,000, the final judgment will be

24  limited to $13,630.89.  AutoZone argues that represents an award significantly lower than

25  the award sought.

26

17

1    Weinstein counters that the circumstances of the damages in this case are unusual.

2    She argues that it is inaccurate to characterize her success as 'partial' or 'limited,' given

3    that her purpose as Trustee was to recover the full degree of the debtor claims to which the

4    estate is entitled, and she has done so. (#118).  The Court agrees; on the question of

5    liability, Weinstein was fully successful.

6    Conversely, although Weinstein was successful in establishing that AutoZone was

7    liable on the FMLA claim, the Court cannot ignore that recovery of damages was limited.

8    Latelle was personally barred from recovering damages because, while being represented

9    by Gebhart, he failed to disclose his FMLA claim in his bankruptcy.  This conduct was not

10    merely limited to conduct prior to the filing of the FMLA claim, but included an ongoing

11    failure to disclose after AutoZone brought the failure to the attention of the Court and

12    Latelle.  The conduct continued after the Trustee appeared in this matter, and after the

13    Trustee re-opened the bankruptcy case.  The conduct included subsequent filings in the re-

14    opened bankruptcy case, but a continued failure to disclose the FMLA claim.  The Court

15    cannot ignore Weinstein is now seeking fees incurred by Gebhart.  While Weinstein is

16    correct that the circumstances of the damages in this case are unusual, those unusual

17    circumstances relate directly back to Gebhart's prosecution of both Latelle's bankruptcy

18    and the present claim.  In light of the opinion of Weinstein's expert that damages would

19    have exceeded $400,000, Gebhart's recovery of less than $14,000 requires a finding that

20    Gebhart's prosecution of the claim while representing Latelle is among the causes of what

21    must be considered a result that is far from fully successful.  Accordingly, the Court will

22    reduce the fees awarded for work incurred by Gebhart by 20%.  As it appears Gebhart has

23    submitted a bill for 213 hours of work, and as the Court has discounted .9 hours of work,

24    Weinstein has requested fees of $53,025 for Gebhart.  A reduction of 20% results in an

25    attorney fee in the amount of $42,420 for Gebhart.

26

18

1

### G.    Costs

AutoZone argues that all requested costs, an amount of $5,179.40, should be denied. (#116). Weinstein counters that AutoZone has not identified and disputed "a single cost" as inappropriate.  AutoZone's argument rests solely on a request that the Court act within its discretion to reduce costs.  AutoZone does not address why any cost should be reduced. (#118). The Court finds that all costs were reasonably incurred as a result of the proceedings.

**Conclusion**

As the motions submitted by the parties reveal that the only issues remaining in the litigation of this matter are the determination of the amount of damages, and the attorney's fees, costs, and expert costs owed by AutoZone to Weinstein, and as the parties have submitted sufficient evidence to allow resolution of these issues, the Court will grant AutoZone's motion and amend the judgment to award Weinstein damages in the amount of $13,630.89, award Weinstein attorney's fees incurred by Michael Gebhart in the amount of $42,420.00, award Weinstein attorney's fees incurred by Sullivan Hill in the amount of $2,500, award Weinstein costs in the amount of $5,179.40, and award Weinstein expert fees in the amount of $6,569.00.  As this resolves all outstanding claims, the amended judgment will be final.

Accordingly, for good cause shown,

THE COURT **ORDERS** that Defendant AutoZoners, LLC's Rule 59 Motion to Amend or Alter Judgment (#117) is GRANTED;

THE COURT FURTHER **ORDERS** that the Counter-motion for Relief from Grant of Partial Summary Judgment filed by Plaintiff Yvette Weinstein, as Trustee of the Bankruptcy Estate of George Latelle, Jr, is DENIED;

1       THE COURT FURTHER **ORDERS** that the Motion for Attorney's Fees and Costs

2  filed by Plaintiff Yvette Weinstein, as Trustee of the Bankruptcy Estate of George Latelle,

3  Jr, is GRANTED in part and DENIED in part.

4

5  DATED this _____ day of September, 2014.

6                                                                        _____

7                                                        Lloyd D. George
                                                        United States District Judge